In addressing the Board of Immigration decision dated June 30, 2005, they made some serious errors in their decision and therefore the case should be remanded to the Administrative Hearing Officer once again. In the Board of Immigration Appeals decision dated June 30, 2005, they state that the Kawashima, Mr. and Mrs. Kawashima, are not eligible for cancellation. Actually, they never applied for cancellation. They applied for 212C relief and also they misstated the legal requirements for cancellation. The Board stated that there is still insufficient evidence of good moral character and exceptional and extremely unusual hardship to a qualifying relative required for cancellation. Is the issue here whether or not there's an aggravated felony? Well, that's another issue. But even in terms of cancellation, cancellation for a lawful person. Where in the Kawashima's motion to reopen is there a request for relief under 212C? Where does that exist?  It's a stated special motion to reopen for 212C relief. Never was it intended to file for cancellation. The initial point in this case is whether or not their conviction was for an aggravated felony or not. The prior counsel at the Administrative Hearing only requested determination of proceedings because he believed that it was not an aggravated felony and, therefore, they were not actually removable. We can make that argument as well because the statute, there are two different statutes, and the government in their brief in the initial proceeding argued that Mr. and Mrs. Kawashima had been or should be looked at as having been convicted under a different statute than that appears in the charging documents. They were convicted under 7206 parens 1 and parens 2 for the husband and the wife, respectively. The government argued that they should be viewed as having been convicted under 7201, which is clearly erroneous. In their plea agreement, they pled to 7206. Never did they plead to 7201. The difference between 7201 and 7206 is that 7201 is tax evasion, which involves quite a lot of actual intent. Under 7206, it's a much lesser offense insofar as it's signing something and there may be some mistake in what you've signed. I would submit to the Court that it's more than possible that many of us have not reviewed every single item in our documents at all times. They did have an accountant, and when they became, and they didn't even speak English at the time that they made these mistakes, but when they became aware of their mistakes, when they became aware of their tax problems, they immediately cooperated with this government in order to repay to the United States Treasury any and all funds that they owed. And the actual plea agreement, the memorandum of the plea agreement, took place in August in 1997. The 212C requirement is that the plea agreement take place by April 1997. But the reason for the delay was not that the Kawashimas didn't want to plead. They were working with the government to assess what the actual penalty would be, what the actual tax problem was, exactly how much. They were involved with this plea agreement at the very beginning of the proceedings with the government. And therefore, that plea agreement, even though the actual formal plea agreement is dated in August, four months later than the statutory requirement, their initial involvement was always an ability and a willingness to totally cooperate with the government. And in fact, they've paid back all the money. And in the documents, in the whole file, you'll see enormous documentation as to their standing in the community. They have more than 60 employees. They've made a tremendous contribution. Well, that goes to different issues than are before us, does it not? Well, no. It's connected to the issue before you because part of the requirement of 212C is remorse and rehabilitation. That's part of the statutory requirements for 212C. And they've met that requirement overwhelmingly. All right. But what did the – okay. But the BIA did not – did the BIA deny the motion as untimely, right? Yes. Okay. So what's the standard of review that we review that for? Well, there's absolute proof that they received it on the statutory date. They received what? They received what on the statutory date? They received the motion by the deadline, by the date. Oh, that the agency received it. Yes. And they said they received it – an application for cancellation on the 27th when actually there's proof in the record that they received it on the statutory date of April 25th. It was sent FedEx to them and we have a – Can we decide that on the basis of this record as it presently is? Yes, definitely. It's in the record. It's in the record. It's attachments to the – All right. Well, that was obviously – that was argued below, right, that they received it by the date. And what did the BIA say? Why did they say they didn't receive it by the date? They made a clear error. That's why we want to – Well, what was their – but what did – why did they say – They made a number of errors. They said that – I mean, that was just one of them. No, no, no. What – why did they say it was untimely? You don't agree with it, but why did they say it was untimely? Because they're – they're harking back to the 90-day rule for motions to reopen. But there's a special rule for 212C motions that had to be received by April 25th, which they did receive. So in paragraph 2 on their June 30th decision, they say a motion to reopen must be filed no later than 90 days. However, there's a special motion for 212C release. Okay. So you were outside the 90 days. And they said you needed to be inside the 90 days. And you're saying – so you concede you were outside the 90 days, but you're saying that your deadline was – but you were allowed to file it later because? Because of the special motion for 212C relief, which had to be received by the administrative body by April 25th, which they did receive. They screwed from the – All right. I understand your argument, then. Thank you. Anything further? Just in terms of the 212C eligibility, whether or not – is interpreted to be an aggravated felony. And the issue there is lost to the government. However, even if they are aggravated – have been convicted of aggravated felonies, it's obvious that they're totally eligible for 212C relief. And if this case were remanded to an immigration judge, I'm certain that an immigration judge would grant 212C relief to them because they meet every single prong of that statute overwhelmingly. All right. You have some reserved time, counsel. We'll hear from you. Good morning. My name is Nancy Friedman for the Attorney General. May I begin, please, by referring to the statutes that we're looking at to determine whether the petitioners were convicted of aggravated felonies? And as opposing counsel said, we are dealing with a couple different statutes here. But may we begin, please, by referring to the tax code statutes that are discussed, those being Section 7201, Attempt to Evade or Defeat Taxes, and then 7206. That is the tax code sections under which the petitioners pled guilty in the proceedings. And I would first like to point out something that I don't think we emphasized in our brief, but, you know, in going back, it seems to me something that is simple and straightforward in that 7206 is entitled Fraud and False Statements. That's the title that Congress gave that section of the tax code and then listed, you know, five subparts underneath that. Whereas the previous tax code section, 7201, is simply entitled, under Part 1, General Provisions, Attempt to Evade or Defeat Taxes. And then skipping over to 7206, the section under which the petitioners pled guilty, it's entitled Fraud and False Statements. So it seems clear that Congress was listing five subparts underneath that, that in order to convict someone, you had to have committed fraud or a false statement. Looking at subpart 1 of 7206, subpart 1 is entitled Declarations Under Penalties of Perjury. And, you know, this Court has reviewed quite a number of times the requirements to obtain a conviction under that section that they made a return. That the tax return was false as to a material matter. Testing, testing, is this in order? Can I continue? I'm sort of the ocean behind you. Apologies for the wave action. Not a problem for me. Okay. The third requirement that is necessary for a conviction is that they sign the tax return willfully and knowingly, knowing it was false. So it seems as this Court agreed in the Abreu-Reyes decision, which was withdrawn on other grounds and so clearly is not binding, but the reasoning that this Court used I find to be persuasive and logical that fraud or a false statement was an element of this conviction. Why not the Third Circuit? I mean, what is it, that we've got a lien decision? Disagreed with that in reasoning that I find logical based on the plain and unambiguous words that Congress used in enacting the statute. Okay, but if we were to adopt your reasoning, we would be in conflict with lien, correct? Yes, I think as recently Bob, the Attorney General, has recently referenced the lien case and reaffirmed the lien case. So you would be saying don't go the way of the Third Circuit? In effect, you'd be relying on the then-Judge Alito decision. Yes. Yes, I would be relying on that, as well as this own Court's reasoning in saying that the statutory language was clear and that petitioners were convicted of an aggravated felony because the core issue, as this Court stated earlier, is cutting to the chase here. What we're looking at is was this conviction one that involved fraud or deceit? Because if so, that really ends our inquiry here. That probably does with respect to Akio, but what about Fusaka? I'm troubled by the absence of proof that as to Mrs. Kawashima, that there was proof of greater than $10,000 loss. What can you rely on in this record to establish that? I'd like to rely on the plea agreement. But there's nothing in the plea agreement from her. Now, there is from him, but not from her. Well, let me have the amount of undeclared income, but how can we from that say that what they owe the government is over $10,000? Well, let me answer that by going to the plea agreement. It appears at page – the part I'm referring to appears at page 135 of the record, and I'm just flipping through to – Akio is Mrs. Kawashima, I believe. Yes. Okay. No, Akio is Mrs. Fusaka was Mrs., I think. Okay. Well, let me refer to paragraph 11 of the plea agreement at page 135 of the record, and it says, The parties agree and stipulate the total amount of corrected corporate taxable income which the government can prove the Kawashima's, plural, fail to report is as follows. And I'd like to also point out that that's $75,000, right? That's $76,000 for NSC, the corporation, and then it goes on to list the unreported income for the second corporation, which from $88,000, $89,000, $90,000, $91,000 is $300,000 and some thousand. But how does that specifically show the loss to the government was over $10,000? I mean, yeah, you can say, well, when I file my taxes, I would have to pay more than $10,000 in taxes on that amount of income, but how do we really know? You know, aren't you asking us to speculate on that? No, not at all. Well, you're probably looking at paragraph 12 with respect to the $245,000 tax loss. Yes. All right, but that's Akio, that's Mr. This has nothing to do with Mrs. Well, that's why I had referred to the paragraph prior to that. Yeah, but we are looking at government's filing of plea agreement, United States versus Akio Kawashima. Yes. I don't see anything similar in the case of. Can you find something in the agreement? Honestly, I would have to go back and comb through it again, Your Honors. I do want to point out that, of course, both the parties signed the plea agreement, which would indicate their agreement to the entire. On what page do you show Mrs. Kawashima's signature? I'm looking at page 142. Right. I can't find it. No, I don't believe that Mrs. Kawashima did sign the plea agreement. Well, then where's the government's proof? The government's proof is the condition itself. She's a separate defendant, as I understand it. Let me. I'm referring back to the actual information and so forth. Well, let me point out something else to the Court, that the petitioner's brief to this Court doesn't dispute the amount of loss. So that issue, if it ever was one, has certainly been waived and is not before the Court today. It just wasn't disputed. To be an aggravated felony, it has to be a loss of over $10,000, right? That is part of the aggravated felony. And they're claiming it's not an aggravated felony, right? They are claiming it's not an aggravated felony on a different part of the statute. They're saying that there was no fraud and deceit involved in their conviction. They're not disputing the amount of loss, and that is, you know, something we also raised in our brief to this Court. So that's the Court issue. Yeah, but they are disputing the legal conclusion of aggravated felony. And doesn't that open up the elements? Absolutely not, Your Honor. Because, you know, an issue that's not raised to this Court is one that may not be considered by the Court. They have waived that issue. I mean, that is something that they had raised earlier to the Board but chose not to bring up in the brief to this Court. And we do point that out in our brief. Well, what about page 12 of their brief where they say these offenses do not constitute an aggravated felony because they are not offenses that involve fraud or deceit in which the loss of the victim exceeds $10,000? But they never discuss the amount. They never go into any discussion of why there's not, you know, the monetary amount. They're discussing the fraud or deceit and why that's not involved in the particular session of the Code. Counsel, unless there's further on that, I have a question with respect to the motion to reopen. Assuming that it were received timely, the Board says it was two days late, but assuming it was received timely, would it have been a viable petition? Assuming it was received timely, would it have been a viable motion? Would it have been arguably available to the Board to grant? Okay. Did they make a prima facie case showing statutory eligibility for cancellation of removal? Okay. I'd like to go back to what Petitioner pointed out, that the Board was discussing cancellation of removal. And that is, in my opinion, not the relief that they were seeking, and the Board did make a mistake in referring to cancellation. And we stated that also in our brief to this Court. But it was a mistake with no consequence here, because I'd like to go back and look at Petitioner's motion. And they said, Motion to Reopen Proceedings and State Deportation under Magana-Pisano versus INS. That was a Ninth Circuit decision that was superseded by the Supreme Court decision in St. Cyr. The Petitioners were obviously trying to apply for 212C relief, you know, post-St. Cyr decision, and the 212C regulations that followed. Let's zero in on the point. If it was timely, did they show a statutory eligibility for some sort of relief? The answer is no, Your Honor. Why? And why? Because their conviction was an aggravated felony. And that goes back to the prior Board decision, which correctly found that their conviction was an aggravated felony for the reasons we were discussing a couple of minutes ago. What's the sequence here? The 212 claim, which was made out, I gather, on page 9 or record page 21, but page 9 of the Motion to Reopen was, let's say it was April 25th. That's certainly the date that's on the front page, although there's a dispute, obviously, as to whether it was received on time. What has to happen here? Did the conviction for the aggravated felony occur prior to that or subsequent to that? Oh, the conviction was well prior to it. It was years prior. May I refer to that page in the record, in the supplemental record, the smaller part of the record? It appears on page 12. And we see that the date stamped by the Board of Immigration Appeals was April 27th. And as you said, there's a dispute about that date. But if I could just point out something that we did not mention, is that this is addressed to the Office of District Counsel, South Olive Street in Los Angeles, California. That's on the Certificate of Service. I don't know if it was sent there, but that is what appears on the certificate dated April 25th. Now, the documents that the petitioners attach to their reply brief, I believe, are not in the record. They are copies of some federal express receipt or something that's addressed to the Board of Immigration Appeals. But, of course, this is a record review. Those documents are not in the record. The record indicates only what it indicates. That is a Certificate of Service, April 25th, Office of District Counsel in Los Angeles. And the Board indicates it received it April 27th. But nonetheless, to go back to the Court's question, they did not prove prima facie eligibility for any relief. Thank you very much. Thank you, counsel. Ms. Wood, you have some reserve questions? Respectfully, I beg to differ with government counsel. Someone can be convicted of an aggravated felony and still be eligible for 212c relief. If someone's convicted of an aggravated felony, you're not eligible for cancellation. That's the difference. In 1997, Congress passed a large piece of immigration legislation, commonly referred to as I-IRA, in which they ended 212c relief but gave a substitute, so to speak, cancellation. Under cancellation, someone who's been convicted of an aggravated felony, a resident who has a green card, cannot be eligible for cancellation. They still remain eligible for 212c relief under St. Cyr. That's an error that the government has, a clear error, has argued today. This record is so confused because of the BIA decision, basically. It's completely off. If you see in the reply brief, we've attached the FedEx U.S. Air Bill. But as counsel for the government points out, that's not in the record, is it? Well, that may be true. But we have it in the reply brief. Well, I have to concede that point, that it's not in the record. But we do have the FedEx. I have to concede that point, that that date. But we still argue that that BIA decision is completely off. But the assertion that you're making is that you can correct it if it's wrong. These exhibits are not in the record. It depends. If you mean the record of proceedings, no, because the cases were consolidated. And the motion... Well, the record isn't in. Well, it's in. When I say the record, I mean it's part of your... it's in our reply brief. It's not in the record. It wasn't sent to the... The BIA may ever see that. No. Did the BIA ever see that... The FedEx. No, because the... I want to discuss a different topic. In my experience as a trial judge, when you listen to a witness who is not responsible, they become suspect. When a lawyer is not responsible, it makes this work a lot harder. And there's no reason for a lawyer to be suspect by not being reasonable. Now, the exhibits are not part of this record. Well, is that true? Yes. It actually couldn't physically have been, because it's after the fact. We obtained the FedEx receipt after the fact. Well, what is the basis upon which you argue that we can not only review the timeliness issue, but find your way on the merits? Well, there's a clear remedy here. The board made a mistake, a very, very clear mistake in saying... So is it a clear error of fact? Is that what you're saying? They said clearly, right on the face of their decision, that they're applying for cancellation. They were not applying for cancellation. They were applying for 212C relief. And the difference between cancellation and 212C is that if you're convicted of an — even if you're convicted of an aggravated felony, you're eligible for 212C. If you have not served five years, a five-year term, you're eligible for 212C. All right. Now, what makes them eligible for 212C in terms of the time sequence here? They're eligible for 212C under the statute itself. Prior to IIRA, there was a very clear definition of 212C. Someone has had to have had residency in this country for seven years. They have to have shown remorse and rehabilitation for the conviction, the crime of which they've been convicted. And they have to prove hardship to a qualifying member of their family. The Kawashimas have two U.S. citizen children to whom their removal would really pose quite a bit of hardship. They're a very close Japanese family. How old are the children, though? They're both adults. They're both adults, young adults. But don't live with them, right? They live with them. They live — well, actually, even though the older son is married, they still live with the parents. Yeah. They all live together as a family unit. And they are statutorily eligible for 212C. The issue is if they have been convicted of an aggravated felony, which we still argue they have not been, then they are not eligible for cancellation. So your argument is that the BIA got it wrong because they refer to cancellation or removal, not 212. Right. And then the BIA went on to say that they didn't — did not prove the hardship for cancellation. But even under the cancellation statute, for a person who's not a resident, who's been in this country for 10 years and has statutory relatives, such as children, spouse, or parents who have either citizenship or lawful permanent residency, the applicant has to prove exceptionally unusual hardship. However, for a person who actually has residency here, hardship is not part of that statutory requirement. So they got — the cancellation statute is also confused. So if the court had been on the right line and page regarding you were requesting 212C relief, do you concede that it's still — the documents were not before the BIA that would have entitled relief for a motion to reopen? No, they were. All you needed to do under that statute was apply for a special motion to reopen under 212C. And you're relying on page 9 of the motion to reopen. Right, right. Exactly. Which has a date stamp of April 27th. Right. All right. We totally conform to the requirements. It should have been remanded. All right. Anything further? No. Thank you, Counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Levy , Callahan